Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Katherine A. Tuohy (SBN 353967)
katherine@swigartlawgroup.com
**Swigart Law Group, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
Dan@ShayLegal.com
**Shay Legal, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOIS MCBRIDE, TAKASHI MERAZ, AARON RICE, ALEX GOELZER, ALEXANDER PADILLA, ALFREDO BARRAGAN, ANGIE RODRIGUEZ, ANNA GARCIA, ANNABELLE PAULINO, ANTHONY ALVA, ANTHONY LYNCH, ARTHUR CUPPS, ASH REDDY, CALLENA ASHER, CAMERON PORTILLO, CARLOS ORTIZ, CHRISTOPHER TRENT, COREY BEAMS, DANIEL GREER, DAVID OCHOA, DESTINEE BENITEZ, ERIC DAROSA, ERIN MESA, ETHAN PEARL, FERNANDO CRUZ, FERNANDO TEJEDA, FRANK TELLEZ, GARY GOMEZ, HAROLD LEE, JAMES WILSON, JASON ALBERT, JASON FERREIRA, JAZMIN SANCHEZ, JEFF MCDOWELL, JESUS GONZALEZ, JOEL HERNANDEZ, JONI SANTANA, JOSEPH SESI, JOSHUA STERN, JUAN GONZALEZ, JULIE STEPHEN, KAREN TOREVELL, KIMBERLY MCBRIDE, KIMBERLY | Case No: **'25CV2619 AJB MMP**<br><br>COMPLAINT FOR DAMAGES RE:<br><br>1. Federal Wiretap Act,<br>   18 U.S.C. §§ 2510, et seq.<br>2. Fair Credit Reporting Act,<br>   15 U.S.C. § 1681, et seq.<br>3. Statutory Larceny,<br>   Cal. Pen. Code §§ 484, 496<br>4. California Invasion of Privacy Act,<br>   Cal. Pen. Code § 631<br>5. California Invasion of Privacy Act,<br>   Cal. Pen. Code § 637.7<br>6. California Invasion of Privacy Act,<br>   Cal. Pen. Code § 638.51<br>7. California Consumer Privacy Act,<br>   Cal. Civ. Code §§ 1798.100, et seq.<br>8. California Unfair Competition Law,<br>   Cal. Bus. & Prof. Code § 17200, et seq.<br>9. Invasion of Privacy Under California's Constitution<br>10. Unjust Enrichment<br><br>Jury Trial Demanded |

Complaint

| | |
|---|---|
| YBARRA, LAUREN CAZEAU, LEONARD CONTRERAS, MATTHEW ISKANDER, PETER LYMBERTOS, RAMIZ NAOUM, RAUL BANDA, REBECCA WILLIAMS, ROBERT BRENNEMAN, RON LATHROP, SARAH BARBOUR, SCOTT PORTER, SERGIO OSEGUERA, STACY BERRY, TABITHA WATTS-BOOKER, VALLI LOPEZ, WILLIAM HAMMIT, ZAHER GARMO,<br><br>               Plaintiffs,<br><br>vs.<br><br><br><br>GENERAL MOTORS LLC, ONSTAR LLC, LEXISNEXIS RISK SOLUTIONS INC. & VERISK ANALYTICS, INC.,<br><br>               Defendants. | |

2

Complaint

## INTRODUCTION

The sixty-one (61) Plaintiffs above ("Plaintiffs") bring this action against General Motors LLC ("GM"), OnStar LLC ("OnStar"), LexisNexis Risk Solutions Inc. ("Lexis"), Verisk Analytics, Inc. ("Verisk") (collectively "Defendants") for violation of federal and state laws. Plaintiffs make their allegations based on personal knowledge of the facts pertaining to themselves, and on information and belief as to all other matters, by and through the investigation of the undersigned counsel.

Plaintiffs are all residents of California. Their claims are substantially similar to the California plaintiffs in the Master Consolidated Class Action Complaint (ECF 109) filed in the Multi District Litigation ("MDL") titled "In re: Consumer Vehicle Driving Data Tracking Collection Litigation" under MDL Docket Number 3115, Case Number 24-md-3115-TWT, in the United States District Court for the Northern District of Georgia, Atlanta Division. Plaintiffs use portions of that complaint and incorporate, reference, and restate the allegations of that complaint.

## NATURE OF THE ACTION

1.     As technology has progressed, automobiles have become driving computers full of data. New cars have digital displays, electronic ignition, sensors, control modules, computer chips, GPS, cell phone connectivity, crash monitoring, etc. While these features are convenient, they come with a hidden cost for GM cars manufactured in the last decade.

2.     About ten (10) years ago, GM began installing its OnStar technology on all new vehicles it manufactured. It did this under the premise that OnStar provides safety, security, and connectivity features for drivers including automatic crash response, emergency services, roadside assistance, turn-by-turn navigation, and stolen vehicle assistance. OnStar does this by maintaining a constantly connected cell phone signal, when there is service.

3.     What GM does not tell people is that OnStar intercepts highly private information about what a person does in their own vehicle. The data GM harvests is

Complaint

linked to specific drivers and vehicles and includes geolocation, route history, driving schedule, fuel or charging levels, hard braking events, hard acceleration events, tailgating, time spent idle, speeds over 80 miles per hour, vehicle speed, average speed, late night driving, driver attention, and more ("Driving Data").

4.    In the information age, data is valuable and GM capitalized on its ill-gotten gain by selling it to Verisk, Lexis and other third parties for its own commercial benefit. GM never informed Plaintiffs what it was doing and never sought or obtained their consent.

5.    Plaintiffs allege that Verisk and Lexis knew, or should have known, that the data GM sold them was not obtained lawfully. Discovery will show that Defendants maintained a profitable conspiracy for years. They never informed Plaintiffs of their arrangement because they knew Plaintiffs would not have agreed to it.

6.    Plaintiffs' Driving Data was intercepted, exploited, and monetized by Defendants, without consent. Plaintiffs seek to hold Defendants accountable for violations of federal and state privacy, consumer protection, and data security laws.

7.    The Driving Data included highly sensitive and personally identifiable information ("PII") such as location history, speed, braking patterns, and acceleration behavior—information that consumers reasonably expected would remain private unless they affirmatively authorized its collection and use.

8.    Rather than safeguarding this information or ensuring it was obtained lawfully, Verisk compiled and analyzed the Driving Data to generate risk profiles and telematics scores, which it then sold or shared with third-party insurers and other commercial entities. These unauthorized disclosures exposed Plaintiffs to increased insurance premiums, loss of privacy, and diminished control over their PII, all while enriching Verisk and the other Defendants.

9.    The harm caused by Defendants' conduct is significant and ongoing. Plaintiffs have suffered economic injury, emotional distress, and a profound invasion of their privacy. Plaintiffs seek damages, restitution, and injunctive relief to stop

Complaint

Defendants' unlawful practices and to restore control over the personal information they wrongfully appropriated.

## PARTIES

10.    Defendant General Motors LLC ("GM") is a Delaware limited liability company, with its principal place of business in Michigan. It manufactures and sells vehicles in the United States and across the world, including Chevrolet, GMC, Cadillac, and Buick branded vehicles.    GM is owned by General Motors Company.

11.    Defendant OnStar LLC ("OnStar") is a Delaware limited liability company, with its principal place of business in Michigan. OnStar is a subsidiary of GM. OnStar provides communications, security, emergency services, navigation, diagnostics, and information services to GM vehicles.  OnStar is also owned by General Motors Company.

12.    Defendant LexisNexis Risk Solutions Inc. ("Lexis") is a Delaware corporation with its principal place of business in Georgia. It is a global data and analytics company that provides data and technology services, analytics, predictive insights, and fraud prevention for a wide range of industries, including the automotive industry.

13.    Defendant Verisk Analytics, Inc. is a Delaware corporation, with its principal place of business in New Jersey.  It is a data analytics and risk assessment company that provides predictive modeling, decision-support tools, and information services to clients in the insurance, energy, financial services, and government sectors. It partners with the global insurance industry to deliver strategic insights into emerging risks, including through the use of telematics and driving behavior data, which is at the core of the misconduct alleged in this case.

14.    Plaintiffs are all a natural persons and adult citizens of the state of California.  Many of them are domiciled in San Diego County, California, including Lois McBride, Takashi Meraz, Fernando Tejeda, Jason Albert, Joel Hernandez, Joni Santana, Joseph Sesi, Sammy Palomo, Valli Lopez, Zaher Garmo, etc.

Complaint

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs allege violations of federal law, including the Federal Wiretap Act, 18 U.S.C. §§ 2510 et seq, and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

16.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because those claims are related to the federal claims that they form part of the same case or controversy.

17.     This Court has personal jurisdiction over Defendants because they are all registered with the California Secretary of State to do business in California, and they purposefully directed conduct toward California. They engaged in substantial, continuous business activities within this District that caused harm to California residents. They knowingly acquired, analyzed, and monetized telematics and Driving Data sourced from vehicles operated by California consumers, including Plaintiffs, while they were physically present in California. The conduct giving rise to Plaintiffs' claims—including the interception, unauthorized use, and commercial exploitation of sensitive personal information—occurred in, was targeted at, and caused injury within the state of California.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants regularly conduct business, and derive substantial revenue from its activities here.

**GENERAL FACTUAL ALLEGATIONS**

19.     **GM** manufactures brands like Chevrolet, GMC, Cadillac, and Buick. In those vehicles, it installs OnStar which incorporates telematic technology or "telematics" which is a combination of the words "telecommunication" and "informatics." Telematics are systems that incorporate

Complaint

GPS and cellular technologies with the vehicle's electronics and sensors to generate and collet data.

20.    Initially, dealers installed OnStar, but since 2015, it all GM vehicles have the system installed in the manufacturing process.  Part of the system monitors the vehicle for diagnostics.  Other parts have GPS navigation, voice recognition, steering wheel controls and Bluetooth.

21.    GM vehicles also have cameras which monitor drivers inside and near the vehicles.  When a cell phone is plugged into a USB port, the system scans their phone for contacts and other data.

22.    **OnStar** was initially marketed as an emergency response system which was a feature GM thought would improve sales.  But once GM saw the data that was being collected, and the value of it, it realized it could make much more money by selling the data.  It approached insurance companies and even considered in-car advertisements.  With the technology, it could monitor where a person goes, where they shop, where they eat, their neighborhood, etc.  All of which can be used for targeted ads.

23.    An entire market ecosystem has been created to deal in the data GM collects and sells.  The vehicle specific participants are manufacturers, dealerships, fleets, rentals, service providers, telematics brokers, and maintenance shops.  The extended participants include telcos, governments, advertisers, content providers, brokers, logistics, intermediaries, financial services, tech, charging and fuel stations, infrastructure entities, etc. Some analysts value the car data industry to be worth billions of dollars.

24.    Verisk and Lexis sought to capitalize on the new car data boom.  Both companies sought GM's Driving Data.  Their idea was for automakers and insurers to use them as a single point of contact between hundreds of automakers and hundreds of insurers wanting access to the data.

25.    **Verisk** provides data analytics, software, and risk assessment solutions primarily to the insurance industry.  The company possesses vast datasets and advanced technology to offer insights and tools for property, casualty and life insurance, annuities, and risk management.

26.    In 2014, it opened  its Verisk Telematics division to help its customers obtain an edge and improve their margins.

27.    In 2015, GM and Verisk partnered beginning the era shared driving information.  Pursuant to their agreement, GM began selling Verisk its customers' Driving Data to Verisk and started sending the data from its customers' vehicles to Verisk without the customers' knowledge or consent.

28.    The Driving Data included each vehicle's location, speed, trip mileage, hard braking and acceleration, unique trip identifiers, and other information.  GM also sold data to Verisk to personally identify each customer, such as the customers' ID number, name, address, VIN, vehicle year, make and model, and their OnStar Vehicle Diagnostics enrollment date.

29.    Verisk created a "Verisk Distracted Driving Score" that used data from drivers' cell phones and tracked phone-handling events and driving speeds, as an indicator of distracted riving.

30.    As GM and Verisk agreed, Verisk created a "Driving Score" for each GM customer using their Driving Data.  Verisk mined the data to prepare Driving Behavior Data History Reports and sold the reports to auto insurance companies.

31.    Verisk made a database to store the Driving Data which it called the "Verisk Data Exchange" and licensed access to insurance companies.  Verisk was the middleman connecting GM to insurance companies.  GM had data the companies wanted and Verisk created a system and a market for the insurance companies to purchase it, all unbeknownst to the drivers.

Complaint

32.   The secret system grew and by 2023, Verisk claimed to have 500 billion miles of connected car telematics data and characteristics on over 270 million drivers and 280 million vehicles,

33.   **Lexis** also sought Driving Data from GM for very similar purposes.  Lexis provides   analytics   to   insurance,   financial   services,   retail,   logistics   and telecommunications companies.

34.   In 2017, Lexis approached GM about building an inter-connected called the "LexisNexis Telematics Exchange."  Lexis said it was well positioned to work with insurers and GM to build the marketplace.

35.   In 2019, GM secretly, and without its customers' consent, agreed to sell Lexis its existing customer Driving Data.  GM sold all the Driving Data that GM had collected from 2017 to 2019 to Lexis for millions of dollars.  Customers whose Driving Data was collected from 2017 to 2019 did not, and could not, consent to the sale in 2019.

36.   From 2019 to 2024, without consent, GM sent its customers' Driving Data to Lexis until it was forced to discontinue the practice in 2024.

37.   The Driving Data that Lexis bought from GM included data on each driver's location, speed, trip mileage, total mileage, hard braking and acceleration, unique trip identifiers, and other information on how they drove their car, including their name, address, phone number, email address, and their vehicle/s VIN, make, model, and year.

38.   Lexis used the Driving Data to calculate a driving score for each GM customer based on a series of driving events that were indicative of bad driving.

39.   Lexis agreed to pay GM a guaranteed minimum payment if GM provided Lexis with the Driving Data of a certain percentage of the vehicles it sold.

40.   Lexis deposited the data it received from GM into its "LexisNexis Telematics Exchange" and charge insurance companies to access the exchange.  The

9

insurance companies used the data to make decisions on monthly premiums, coverage or to drop or decline coverage.

41.     By 2022, Lexis had driving behaviors from over 10 million vehicles, 252 billion driving miles or the equivalent of 19.5 million years of vehicle logging, all obtained without the knowledge or consent of the drivers.

42.     **Defendants** hid their data gathering and sharing practices from customers intentionally to make their practice work, thereby avoiding regulations and consumer backlash.  They knew that disclosing the practices would be a problem and would torpedo their scheme.

43.     In 2011, GM announced that it planned to collect data from GM vehicles, even if a customer no longer subscribed to OnStar, unless a customer called GM and opted out.

44.     The public was outraged;  Senators Coons and Al Franken decried the change as violating the basic principles of privacy and fairness.  Senator Schumer described it as one of the most brazen invasions of privacy in recent memory.

45.     GM publicly reversed the  decision in days, but secretly pushed forward with the plan anyway.

46.     In 2010, GM became of the first companies to connect the internet to their vehicles' navigation and other systems.  With that introduction, GM gained the ability to instantly transmit Driving Data from vehicles to its data center.

47.     From 2014 to 2015 GM rolled our 4G LTE connectivity for all its models 2015 or newer.  By this time, OnStar was worth $9 billion, but with the newer, faster connectivity, analysts predicted valuable growth.

48.     Initially, OnStar required a subscription, but GM began offering the new OnStar Basic Plan for free that was automatically included in new vehicles. Masked as a benefit for its customers, the true intent was more sinister.  For 2015

10

vehicles onward, OnStar continuously transmitted Driving Data to GM, unbeknownst to the driver.

49.     In 2016, GM launched "Smart Driver" which it used to intercept extensive, highly private, Driving Data reflecting consumers' driving behaviors and their locations.  It did this by using the many sensors and the on-board computers in the consumers' vehicles.  The data including information on hard braking, accelerating, driving without a seat belt, driving over 80 miles per hour, and late-night driving - which it defined as between 12:00 am and 4:00 am.

50.     A GM vehicle can include as many as 200 sensors for things like; road conditions, distance from other vehicles, forward obstacles, blind spots, drive recorder, side obstacles, air pressures, door locks, rear obstacles, GPS, airbags, rear view cameras, side and front view cameras, water sensing wipers, seat belts, driver monitoring, heads up display, steering, throttle, brakes, fires, speed, acceleration, deceleration, braking, collisions, pedestrians, messages, hands-free, etc.

51.     The sensors are connected to internal processing units in the vehicle which are essentially mini-computers referred to as "electronic control units" or ECUs.  ECUs are in turn connected to a central processing unit or central gateway.

52.      Gateways allow different systems to "speak" to each other. They "connect different electronic control units, translating data from one protocol to another before forwarding it on" to another ECU.  Gateways send data to a vehicle's telematics control unit.  The telematics control unit ("TCU") sends Driving Data out of the vehicle.

53.     In GM vehicles equipped with OnStar, raw data detected by vehicle sensors is processed by vehicle electronic control units and transmitted through gateways to the TCU.

54.     GM uses the TCU to transmit detailed driving behavior and geolocation information to itself both during routine vehicle operation and upon the completion of vehicle trips, all unbeknownst to drivers.

55.     Specifically, the TCU transmits the detailed driving behavior and

geolocation data received from GPS satellites to GM/OnStar through the vehicle's cellular network connection.

56.    GM, through the TCU, transmits certain Driving Data to itself in real time - for example, data regarding vehicle location and speed.

57.    GM, through the TCU, accesses stored Driving Data and transmits it to itself after each trip or on other periodic bases—for example, average speed during a trip, or number of miles driven during a trip.

58.    GM then secretly sold the data it collected from its drivers to Verisk and Lexis for sale on their insurance exchanges.  Defendants conspired to amass millions of consumers' highly private, personal information, generated substantial profit, and then licensed that information to an unknown number of unknown third parties.

59.    **Consent**, was not obtained by Defendants, a practice that Senators Wyden and Markey condemned as a flagrant abuse of customers' privacy.

60.    GM contends it obtained consent pursuant to the "OnStar Terms." However, a document titled OnStar Terms does not exist.  Instead, the terms GM cites are an amalgamation of two documents on two different websites, neither of which have OnStar in the title—specifically, the "User Terms for Connected Vehicle Services" (the "User Terms") and the "U.S. Connected Services Privacy Statement" (the "Privacy Statement").

61.    These byzantine, multi-platform, cross-referential set of agreements are virtually impossible for a reasonable consumer to comprehend. At all relevant times, GM knew that these documents rendered its data privacy controls difficult to find and even more difficult to understand.

62.    In 2024, once it was caught, GM reworked its privacy practices and controls to make them easier to find and understand and consolidated its and rewritten its web of statements.  It added sections explaining how customers can

12

limit access or delete their data. As these changes underscore, GM knew it did not inform its customers of its practices so they could provide consent.

63. Neither document that comprises the OnStar Terms addressed, disclosed, or authorized GM's surreptitious collection and sale of consumers' Driving Data. Nowhere, in either document does GM disclose to drivers that their Driving Data will be sold to Lexis, Verisk, or third-party risk assessors or data aggregation companies. Nowhere, in either document, does GM disclose that Verisk and Lexis would then manipulate the Driving Data to create profiles and "scores" for drivers. Nowhere, in either document, does GM disclose that Verisk and Lexis would sell consumers' Driving Data and driving scores to other third parties.

64. The User Terms do not cover or purport to address GM and third parties' surreptitious collection and sale of Driving Data. According to the User Terms, they apply to your use of the connected vehicle services we make available to You. Nothing in the User Terms refers to GM's use of connected vehicle services. Indeed, the User Terms do not address GM's data sharing practices, other than to reference the "Privacy Statement."

65. But the Privacy Statement also does not disclose GM's collection and sale of Driving Data to Verisk, Lexis, or any other third parties. Consumers did not consent to have GM collect their Driving Data for purposes of providing it to Verisk and Lexis, and never elected to receive a service from Verisk and Lexis (let alone a service whereby Lexis or Verisk compiled their Driving Data for resale) nor did consumers authorize them to request Driving Data from GM.

66. Thus, even if GM drivers consented to the User Terms and Privacy Statement, they unequivocally did not consent to the collection of their Driving Data.

67. Startin in 2015, GM mandated that its dealers activate OnStar for buyers and lessees of cars model year 2015 or newer. To ensure compliance with this mandate, GM imposed penalties for dealer employees that failed to activate OnStar via the

Complaint

"onboarding process" at point of sale - and gave financial rewards for dealers that complied.

68.     Dealership employees' pay was contingent on completing the onboarding process with the customer and convincing the customer to activate OnStar (and, as a result, the data connection between GM and the vehicle). As a result, dealership employees were incentivized to sign up as many customers as possible, clicking through screens and agreements without obtaining customer consent, and rushing through the process so that consumers were unable to review any terms that might be applicable to the program.  As a result, consumers nationwide were enrolled in OnStar, and Smart Driver, without their knowledge or consent.

69.     In July 2022, GM announced that a 3-year OnStar & Connected Services Plan was mandatory for purchases of new Buick, GMC, and Cadillac models, and $1,500 would be built into the price of the car whether the customer activates OnStar or not.  GM made it impossible to remove OnStar and every car delivered from the factory included it.

70.     In 2024, once it had been caught, GM announced that it had made enhancements to the OnStar enrollment process and it reminded dealers of the important role they play in helping to ensure customers are aware of the privacy statement, the user terms, and the choices they can make about vehicle connectivity and communication preferences.

## PLAINTIFFS' FACTUAL ALLEGATIONS

71.     Lois McBride lives in El Cajon, California.  Lois owns and drives a 2019 Chevrolet Malibu with a VIN ending 7299.  Lois has a Driver Behavior History Report from Verisk dated May 16, 2025.  The report shows Lois's personal information linked to Lois's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date

Complaint

is "Ignition On."  The Event Time is 13:35:45 and the Odometer was 29595.9.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

72.   Takashi Meraz lives in Escondido, California.  Takashi owns and drives a 2021 Cadillac XT6 with a VIN ending 0968.  Takashi has a Driver Behavior History Report from Verisk dated May 16, 2025.  The report shows Takashi's personal information linked to Takashi's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated December 29, 2022, the Event Type on that date is "Ignition On." The Event Time is 23:04:17 and the Odometer was 52434.8.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

73.   Aaron Rice lives in California.  Aaron owns and drives a 2018 Cadillac XT5 AWD with a VIN ending 3777.  Aaron has a Driver Behavior History Report from Verisk dated August 7, 2025.  The report shows Aaron's personal information linked to Aaron's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."  The Event Time is 16:23:20 and the Odometer was 62998.6.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers,

Complaint

1    but Lexis has refused to do so since the related litigation commenced.  Plaintiffs
2    will seek the data from Lexis in discovery.

3           74.    Alex Goelzer lives in California.  Alex owns and drives a 2017 GMC
4    Terrain AWD with a VIN ending 7617.  Alex has a Driver Behavior History
5    Report from Verisk dated August 7, 2025.  The report shows Alex's personal
6    information linked to Alex's Driving Data that Defendants intercepted, stole,
7    collected, leaked, reported, and sold without consent.  The first Driving Event
8    Detail on that report is dated April 11, 2021, the Event Type on that date is
9    "Ignition On."   The Event Time is 14:59:31 and the Odometer was 88518.0.
10   There is much more Driving Data on the report such as Trip Count, Speeding
11   Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving
12   Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will
13   produce reports containing the data at issue when requested by consumers, but
14   Lexis has refused to do so since the related litigation commenced.  Plaintiffs will
15   seek the data from Lexis in discovery.

16          75.    Alexander Padilla lives in California.  Alexander owns and drives a
17   2016 G Cruze with a VIN ending 0911.  Alexander has a Driver Behavior History
18   Report from Verisk dated August 8, 2025.   The report shows Alexander's
19   personal information linked to Alexander's Driving Data that Defendants
20   intercepted, stole, collected, leaked, reported, and sold without consent.  The first
21   Driving Event Detail on that report is dated January 25, 2024, the Event Type on
22   that date is "Ignition On."   The Event Time is 09:27:55 and the Odometer was
23   164192.2.  There is much more Driving Data on the report such as Trip Count,
24   Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime
25   Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk
26   will produce reports containing the data at issue when requested by consumers,
27   but Lexis has refused to do so since the related litigation commenced.  Plaintiffs
28   will seek the data from Lexis in discovery.

Complaint

76.    Alfredo Barragan lives in California.  Alfredo owns and drives a 2019 Chevrolet Crew Cab with a VIN ending 4377.  Alfredo has a Driver Behavior History Report from Verisk dated May 12, 2025.  The report shows Alfredo's personal information linked to Alfredo's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated September 20, 2018, the Event Type on that date is "Ignition On." The Event Time is 19:38.18 and the Odometer was 347.6.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

77.    Angie Rodriguez lives in California.  Angie owns and drives a 2019 Chevrolet Traverse with a VIN ending 0854.  Angie has a Driver Behavior History Report from Verisk dated August 7, 2025.  The report shows Angie's personal information linked to Angie's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 15:59:42 and the Odometer was 73287.1.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

78.    Anna Garcia lives in California.  Anna owns and drives a 2020 Chevrolet Trax with a VIN ending 6745.  Anna has a Driver Behavior History Report from Verisk dated August 7, 2025.  The report shows Anna's personal information linked to Anna's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold

Complaint

without consent.  The first Driving Event Detail on that report is dated April 2, 2021, the Event Type on that date is "Ignition On."   The Event Time is 07:07:29 and the Odometer was 2663.8.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

79.     Annabelle Paulino lives in California.  Annabelle owns and drives a 2024 Cadillac Lyriq Super Cruise with a VIN ending 2203.  Annabelle has a Driver Behavior History Report from Verisk dated August 8, 2025.  The report shows Annabelle's personal information linked to Annabelle's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated February 2, 2024, the Event Type on that date is "Ignition On."   The Event Time is 16:21:01 and the Odometer was 11.2.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

80.     Anthony Alva lives in California.  Anthony owns and drives a 2017 GMC Yukon XL with a VIN ending 8890.  Anthony has a Driver Behavior History Report from Verisk dated May 12, 2025.  The report shows Anthony's personal information linked to Anthony's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated July 8, 2023, the Event Type on that date is "Ignition On."     The Event Time is 16:04:06 and the Odometer was

Complaint

261738.6.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

81.    Anthony Lynch lives in California.  Anthony owns and drives a 2023 GMC Yukon Denali Super Cruise with a VIN ending 3379.  Anthony has a Driver Behavior History Report from Verisk dated September 22, 2025.  The report shows Anthony's personal information linked to Anthony's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated December 16, 2022, the Event Type on that date is "Ignition On."   The Event Time is 20:08:04 and the Odometer was 6.7.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

82.    Arthur Cupps lives in California.  Arthur owns and drives a 2019 Buick Encore AWD with a VIN ending 2208.  Arthur has a Driver Behavior History Report from Verisk dated August 11, 2025.  The report shows Arthur's personal information linked to Arthur's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 21:17:14 and the Odometer was 61893.8.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by

Complaint

consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

83. Ash Reddy lives in California. Ash owns and drives a 2017 Chevrolet Volt with a VIN ending 9648. Ash has a Driver Behavior History Report from Verisk dated September 17, 2025. The report shows Ash's personal information linked to Ash's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent. The first Driving Event Detail on that report is dated September 29, 2016, the Event Type on that date is "Ignition On." The Event Time is 17:06:32 and the Odometer was 1085.6. There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc. At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

84. Callena Asher lives in California. Callena owns and drives a 2020 Chevrolet Impala with a VIN ending 8102. Callena has a Driver Behavior History Report from Verisk dated August 12, 2025. The report shows Callena's personal information linked to Callena's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent. The first Driving Event Detail on that report is dated January 5, 2023, the Event Type on that date is "Ignition On." The Event Time is 20:33:25 and the Odometer was 100856.2. There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc. At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

Complaint

85.    Cameron Portillo lives in California.  Cameron owns and drives a 2021 Chevrolet Equinox with a VIN ending 7604.  Cameron has a Driver Behavior History Report from Verisk dated August 11, 2025.  The report shows Cameron's personal information linked to Cameron's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated May 18, 2021, the Event Type on that date is "Ignition On."   The Event Time is 15:36:00 and the Odometer was 37.5.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

86.    Carlos Ortiz lives in California.  Carlos owns and drives a 2018 Chevrolet Cruze Diesel with a VIN ending 3112.  Carlos has a Driver Behavior History Report from Verisk dated May 12, 2025.  The report shows Carlos's personal information linked to Carlos's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated August 16, 2018, the Event Type on that date is "Ignition On."   The Event Time is 20:34:26 and the Odometer was 27.7.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

87.    Christopher Trent lives in California.  Christopher owns and drives a 2023 Chevrolet Suburban with a VIN ending 1876.  Christopher has a Driver Behavior History Report from Verisk dated August 12, 2025.  The report shows Christopher's personal information linked to Christopher's Driving Data that Defendants intercepted,

stole, collected, leaked, reported, and sold without consent. The first Driving Event Detail on that report is dated May 27, 2023, the Event Type on that date is "Ignition On." The Event Time is 16:57:10 and the Odometer was 5.6. There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc. At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

88. Corey Beams lives in California. Corey owns and drives a 2019 Chevrolet Impala with a VIN ending 7308. Corey has a Driver Behavior History Report from Verisk dated August 13, 2025. The report shows Corey's personal information linked to Corey's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent. The first Driving Event Detail on that report is dated April 21, 2021, the Event Type on that date is "Ignition On." The Event Time is 12:46:40 and the Odometer was 8907.6. There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc. At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

89. Daniel Greer lives in California. Daniel owns and drives a 2023 Chevrolet Corvette with a VIN ending 3462. Daniel has a Driver Behavior History Report from Verisk dated August 13, 2025. The report shows Daniel's personal information linked to Daniel's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent. The first Driving Event Detail on that report is dated March 8, 2023, the Event Type on

Complaint

that date is "Ignition On."    The Event Time is 11:37:49 and the Odometer was 8.3. There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

90.    David Ochoa lives in California.  David owns and drives a 2018 Chevrolet Malibu Hybrid with a VIN ending 5797.  David has a Driver Behavior History Report from Verisk dated August 13, 2025.  The report shows David's personal information linked to David's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 14:19:22 and the Odometer was 94813.7.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

91.    Destinee Benitez lives in California.  Destinee owns and drives a 2019 Chevrolet Traverse with a VIN ending 9826.  Destinee has a Driver Behavior History Report from Verisk dated August 13, 2025.  The report shows Destinee's personal information linked to Destinee's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated August 13, 2025, the Event Type on that date is "Ignition On."   The Event Time is 18:16:10 and the Odometer was 54242.2.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when

Complaint

requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

92.    Eric DaRosa lives in California.  Eric owns and drives a 2018 GMC Sierra Crew Cab with a VIN ending 7141.  Eric has a Driver Behavior History Report from Verisk dated May 13, 2025.  The report shows Eric's personal information linked to Eric's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 15:42:21 and the Odometer was 93842.2.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

93.    Erin Mesa lives in California.  Erin owns and drives a 2024 GMC Yukon with a VIN ending 5891.  Erin has a Driver Behavior History Report from Verisk dated May 13, 2025.  The report shows Erin's personal information linked to Erin's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated January 2, 2024, the Event Type on that date is "Ignition On."  The Event Time is 17:59:55 and the Odometer was 18.7.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

94.    Ethan Pearl lives in California.   Ethan owns and drives a 2022 Buick
Encore GX with a VIN ending 5245.  Ethan has a Driver Behavior History Report from
Verisk dated May 13, 2025.  The report shows Ethan's personal information linked to
Ethan's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and
sold without consent.  The first Driving Event Detail on that report is dated June 8,
2022, the Event Type on that date is "Ignition On."  The Event Time is 13:19:52 and
the Odometer was 143.4.  There is much more Driving Data on the report such as Trip
Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime
Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will
produce reports containing the data at issue when requested by consumers, but Lexis
has refused to do so since the related litigation commenced.  Plaintiffs will seek the data
from Lexis in discovery.

95.    Fernando Cruz lives in California.  Fernando owns and drives a 2023
Chevrolet Silverado Crew Cab with a VIN ending 2467.  Fernando has a Driver
Behavior History Report from Verisk dated August 14, 2025.  The report shows
Fernando's personal information linked to Fernando's Driving Data that Defendants
intercepted, stole, collected, leaked, reported, and sold without consent.  The first
Driving Event Detail on that report is dated December 1, 2023, the Event Type on that
date is "Ignition On."  The Event Time is 17:43:27 and the Odometer was 116.8.  There
is much more Driving Data on the report such as Trip Count, Speeding Events, Hard
Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime
Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the
data at issue when requested by consumers, but Lexis has refused to do so since the
related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

96.    Fernando Tejeda lives in California.  Fernando owns and drives a 2018
Chevrolet Silverado Crew Cab with a VIN ending 2828.  Fernando has a Driver
Behavior History Report from Verisk dated August 15, 2025.  The report shows
Fernando's personal information linked to Fernando's Driving Data that Defendants

Complaint

intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."    The Event Time is 16:03:13 and the Odometer was 84381.0.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

97.    Frank Tellez lives in California.  Frank owns and drives a 2022 Chevrolet Silverado Crew Cab with a VIN ending 7632.  Frank has a Driver Behavior History Report from Verisk dated May 13, 2025.  The report shows Frank's personal information linked to Frank's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated January 2, 2023, the Event Type on that date is "Ignition On."    The Event Time is 12:53:06 and the Odometer was 59.5.    There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

98.    Gary Gomez lives in California.  Gary owns and drives a 2023 Chevrolet Malibu with a VIN ending 4603.  Gary has a Driver Behavior History Report from Verisk dated August 14, 2025.  The report shows Gary's personal information linked to Gary's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated November 9, 2022, the Event Type on that date is

Complaint

"Ignition On."   The Event Time is 14:22:00 and the Odometer was 4.5.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

99.    Harold Lee lives in California.  Harold owns and drives a 2017 Buick Encore with a VIN ending 9951.  Harold has a Driver Behavior History Report from Verisk dated August 19, 2025.  The report shows Harold's personal information linked to Harold's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated August 23, 2018, the Event Type on that date is "Ignition On."   The Event Time is 18:02:14 and the Odometer was 59784.7.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

100.    James Wilson lives in California.  James owns and drives a 2021 Chevrolet Equinox with a VIN ending 4874.  James has a Driver Behavior History Report from Verisk dated July 8, 2025.  The report shows James's personal information linked to James's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated August 27, 2021, the Event Type on that date is "Ignition On."   The Event Time is 19:23:01 and the Odometer was 30.2.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis

Complaint

has refused to do so since the related litigation commenced.  Plaintiffs will seek
the data from Lexis in discovery.

101.    Jason Albert lives in California.  Jason owns and drives a 2022
Chevrolet Silverado Crew Cab with a VIN ending 5555.  Jason has a Driver
Behavior History Report from Verisk dated August 20, 2025.  The report shows
Jason's personal information linked to Jason's Driving Data that Defendants
intercepted, stole, collected, leaked, reported, and sold without consent.  The first
Driving Event Detail on that report is dated July 9, 2022, the Event Type on that
date is "Ignition On."   The Event Time is 16:51:53 and the Odometer was 35.6.
There is much more Driving Data on the report such as Trip Count, Speeding
Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving
Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will
produce reports containing the data at issue when requested by consumers, but
Lexis has refused to do so since the related litigation commenced.  Plaintiffs will
seek the data from Lexis in discovery.

102.    Jason Ferreira lives in California.  Jason owns and drives a 2018
Chevrolet Camaro with a VIN ending 9273.  Jason has a Driver Behavior History
Report from Verisk dated August 20, 2025.  The report shows Jason's personal
information linked to Jason's Driving Data that Defendants intercepted, stole,
collected, leaked, reported, and sold without consent.  The first Driving Event
Detail on that report is dated April 2, 2021, the Event Type on that date is
"Ignition On."   The Event Time is 09:42:20 and the Odometer was 15846.2.
There is much more Driving Data on the report such as Trip Count, Speeding
Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving
Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will
produce reports containing the data at issue when requested by consumers, but
Lexis has refused to do so since the related litigation commenced.  Plaintiffs will
seek the data from Lexis in discovery.

Complaint

103.   Jazmin Sanchez lives in California.   Jazmin owns and drives a 2015 Chevrolet Cruze with a VIN ending 4754.  Jazmin has a Driver Behavior History Report from Verisk dated May 13, 2025.  The report shows Jazmin's personal information linked to Jazmin's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 16:22:21 and the Odometer was 202167.5.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

104.   Jeff McDowell lives in California.  Jeff owns and drives a 2020 Chevrolet Corvette Convertible with a VIN ending 0651. Jeff has a Driver Behavior History Report from Verisk dated August 21, 2025. The report shows Jeff's personal information linked to Jeff's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated December 14, 2023, the Event Type on that date is "Ignition On."   The Event Time is 04:36:10 and the Odometer was 74840.0.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

105. Jesus Gonzalez lives in California.   Jesus owns and drives a 2018 Chevrolet Cruze Hatchback with a VIN ending 6626.  Jesus has a Driver Behavior History Report from Verisk dated July 8, 2025.  The report shows Jesus's personal information linked to Jesus's Driving Data that Defendants intercepted, stole, collected,

leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated September 20, 2018, the Event Type on that date is "Ignition On." The Event Time is 09:39:37 and the Odometer was 24.8.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

106.   Joel Hernandez lives in California.  Joel owns and drives a 2020 GMC Sierra Crew Cab with a VIN ending 1279.  Joel has a Driver Behavior History Report from Verisk dated May 13, 2025.  The report shows Joel's personal information linked to Joel's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 18:20:08 and the Odometer was 21017.9. There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

107.   Joni Santana lives in California.  Joni owns and drives a 2024 Chevrolet Silverado Crew Cab with a VIN ending 6854.  Joni has a Driver Behavior History Report from Verisk dated July 9, 2025.  The report shows Joni's personal information linked to Joni's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated February 26, 2024, the Event Type on that

date is "Ignition On."   The Event Time is 21:01:41 and the Odometer was 37.4.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

108.   Joseph Sesi lives in California.  Joseph owns and drives a 2018 Chevrolet Tahoe with a VIN ending 9543.  Joseph has a Driver Behavior History Report from Verisk dated February 21, 2025.  The report shows Joseph's personal information linked to Joseph's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.   The first Driving Event Detail on that report is dated September 2, 2018, the Event Type on that date is "Ignition On."   The Event Time is 17:37:44 and the Odometer was 3740.4.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

109.   Joshua Stern lives in California.  Joshua owns and drives a 2018 Chevrolet Bolt EV with a VIN ending 4309.  Joshua has a Driver Behavior History Report from Verisk dated August 25, 2025.  The report shows Joshua's personal information linked to Joshua's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.   The first Driving Event Detail on that report is dated November 3, 2018, the Event Type on that date is "Ignition On."   The Event Time is 18:41:48 and the Odometer was 181.0.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers,

Complaint

but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

110.    Juan Gonzalez lives in California.  Juan owns and drives a 2019 Chevrolet Traverse AWD with a VIN ending 9373.  Juan has a Driver Behavior History Report from Verisk dated August 25, 2025.  The report shows Juan's personal information linked to Juan's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 13:41:26 and the Odometer was 43141.6. There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

111.    Julie Stephen lives in California.  Julie owns and drives a 2020 Chevrolet Blazer with a VIN ending 1703.  Julie has a Driver Behavior History Report from Verisk dated July 10, 2025.  The report shows Julie's personal information linked to Julie's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 15:30:13 and the Odometer was 4429.5.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

112.    Karen Torevell lives in California.    Karen owns and drives a 2023 Chevrolet Colorado Crew Cab with a VIN ending 8255.    Karen has a Driver Behavior History Report from Verisk dated July 10, 2025.    The report shows Karen's personal information linked to Karen's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.    The first Driving Event Detail on that report is dated January 12, 2024, the Event Type on that date is "Ignition On."    The Event Time is 18:32:26 and the Odometer was 8.7.    There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.    At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.    Plaintiffs will seek the data from Lexis in discovery.

113.    Kimberly McBride lives in California.    Kimberly owns and drives a 2017 Chevrolet Malibu with a VIN ending 3085.    Kimberly has a Driver Behavior History Report from Verisk dated August 26, 2025.    The report shows Kimberly's personal information linked to Kimberly's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.    The first Driving Event Detail on that report is dated September 6, 2017, the Event Type on that date is "Ignition On." The Event Time is 15:39:55 and the Odometer was 56.7.    There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.    At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.    Plaintiffs will seek the data from Lexis in discovery.

114.    Kimberly Ybarra lives in California.    Kimberly owns and drives a 2020 Chevrolet Trax with a VIN ending 7618.    Kimberly has a Driver Behavior History Report from Verisk dated August 26, 2025.    The report shows Kimberly's personal information linked to Kimberly's Driving Data that Defendants intercepted, stole,

33

collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."  The Event Time is 15:30:49 and the Odometer was 7504.5.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

115.   Lauren Cazeau lives in California.  Lauren owns and drives a 2023 Chevrolet Equinox with a VIN ending 1486.  Lauren has a Driver Behavior History Report from Verisk dated May 12, 2025.  The report shows Lauren's personal information linked to Lauren's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 25, 2023, the Event Type on that date is "Ignition On."   The Event Time is 13:19:08 and the Odometer was 204.9.   There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

116.   Leonard Contreras lives in California.  Leonard owns and drives a 2016 Chevrolet Silverado Crew Cab with a VIN ending 4638.  Leonard has a Driver Behavior History Report from Verisk dated July 15, 2025.  The report shows Leonard's personal information linked to Leonard's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated September 29,

2016, the Event Type on that date is "Ignition On."  The Event Time is 18:11:13 and the Odometer was 12331.7.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

117.   Matthew Iskander lives in California.  Matthew owns and drives a 2018 Cadillac XTS with a VIN ending 0764.  Matthew has a Driver Behavior History Report from Verisk dated September 3, 2025.   The report shows Matthew's personal information linked to Matthew's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated January 1, 2024, the Event Type on that date is "Ignition On."   The Event Time is 04:02:26 and the Odometer was 216732.7.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

118.   Peter Lymbertos lives in California. Peter owns and drives a 2022 Chevrolet Equinox with a VIN ending 6896.  Peter has a Driver Behavior History Report from Verisk dated September 5, 2025.   The report shows Peter's personal information linked to Peter's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated November 7, 2022, the Event Type on that date is "Ignition On."   The Event Time is 09:12:19 and the Odometer was 21.5.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At

least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

119.   Ramiz Naoum lives in California.  Ramiz owns and drives a 2021 Cadillac Escalade with a VIN ending 8391.  Ramiz has a Driver Behavior History Report from Verisk dated February 19, 2025.  The report shows Ramiz's personal information linked to Ramiz's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated August 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 12:57:59 and the Odometer was 11.8.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

120.   Raul Banda lives in California.  Raul owns and drives a 2021 GMC Sierra HD Crew Cab Diesel with a VIN ending 8651.  Raul has a Driver Behavior History Report from Verisk dated September 8, 2025.  The report shows Raul's personal information linked to Raul's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated July 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 16:01:31 and the Odometer was 60.0.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has

Complaint

refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

121.  Rebecca Williams lives in California.  Rebecca owns and drives a 2019 Buick Enclave with a VIN ending 2159.  Rebecca has a Driver Behavior History Report from Verisk dated September 8, 2025.  The report shows Rebecca's personal information linked to Rebecca's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."  The Event Time is 14:51:41 and the Odometer was 39282.3.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

122.  Robert Brenneman lives in California.  Robert owns and drives a 2019 Chevrolet Bolt EV with a VIN ending 8880.  Robert has a Driver Behavior History Report from Verisk dated July 25, 2025.  The report shows Robert's personal information linked to Robert's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."  The Event Time is 13:09:10 and the Odometer was 57240.0.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

123.  Ron Lathrop lives in California.  Ron owns and drives a 2024 Chevrolet Silverado Crew Cab with a VIN ending 2530.  Ron has a Driver Behavior History

Report from Verisk dated July 25, 2025. The report shows Ron's personal information linked to Ron's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent. The first Driving Event Detail on that report is dated December 27, 2023, the Event Type on that date is "Ignition On." The Event Time is 18:07:59 and the Odometer was 7.5. There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc. At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

124. Sarah Barbour lives in California. Sarah owns and drives a 2020 Chevrolet Bolt EV with a VIN ending 6491. Sarah has a Driver Behavior History Report from Verisk dated July 29, 2025. The report shows Sarah's personal information linked to Sarah's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent. The first Driving Event Detail on that report is dated October 6, 2023, the Event Type on that date is "Ignition On." The Event Time is 18:34:03 and the Odometer was 47601.1. There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc. At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced. Plaintiffs will seek the data from Lexis in discovery.

125. Scott Porter lives in California. Scott owns and drives a 2022 GMC Canyon Crew Cab with a VIN ending 3787. Scott has a Driver Behavior History Report from Verisk dated September 18, 2025. The report shows Scott's personal information linked to Scott's Driving Data that Defendants intercepted, stole,

collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated April 2, 2022, the Event Type on that date is "Ignition On."   The Event Time is 13:21:17 and the Odometer was 43.0.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

126.  Sergio Oseguera lives in California.  Sergio owns and drives a 2018 Chevrolet Equinox with a VIN ending 1857.  Sergio has a Driver Behavior History Report from Verisk dated July 28, 2025.  The report shows Sergio's personal information linked to Sergio's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated March 31, 2021, the Event Type on that date is "Ignition On."   The Event Time is 13:33:44 and the Odometer was 46765.8.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

127.  Stacy Berry lives in California.  Stacy owns and drives a 2024 Buick Envista with a VIN ending 8750.  Stacy has a Driver Behavior History Report from Verisk dated September 9, 2025.  The report shows Stacy's personal information linked to Stacy's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated October 29, 2023, the Event Type on that date is "Ignition On."   The Event Time is 12:00:08 and the Odometer was 89.8.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events,

1    Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At
2    least Verisk will produce reports containing the data at issue when requested by
3    consumers, but Lexis has refused to do so since the related litigation commenced.
4    Plaintiffs will seek the data from Lexis in discovery.

5        128.    Tabitha Watts-Booker lives in California.  Tabitha owns and drives
6    a 2018 Chevrolet Sonic with a VIN ending 8607.  Tabitha has a Driver Behavior
7    History Report from Verisk dated July 28, 2025.  The report shows Tabitha's
8    personal information linked to Tabitha's Driving Data that Defendants
9    intercepted, stole, collected, leaked, reported, and sold without consent.  The first
10    Driving Event Detail on that report is dated April 25, 2018, the Event Type on
11    that date is "Ignition On."   The Event Time is 16:37:31 and the Odometer was
12    19.6.  There is much more Driving Data on the report such as Trip Count,
13    Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime
14    Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk
15    will produce reports containing the data at issue when requested by consumers,
16    but Lexis has refused to do so since the related litigation commenced.  Plaintiffs
17    will seek the data from Lexis in discovery.

18        129.    Valli Lopez lives in California.  Valli owns and drives a 2017 GMC
19    Yukon with a VIN ending 6013.  Valli has a Driver Behavior History Report from
20    Verisk dated July 28, 2025.  The report shows Valli's personal information linked
21    to Valli's Driving Data that Defendants intercepted, stole, collected, leaked,
22    reported, and sold without consent.  The first Driving Event Detail on that report
23    is dated February 6, 2017, the Event Type on that date is "Ignition On."   The
24    Event Time is 12:48:21 and the Odometer was 172.0.  There is much more
25    Driving Data on the report such as Trip Count, Speeding Events, Hard Braking
26    Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime
27    Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports
28    containing the data at issue when requested by consumers, but Lexis has refused

Complaint

to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

130.   William Hammit lives in California.  William owns and drives a 2019 Chevrolet Silverado Crew Cab with a VIN ending 4226.  William has a Driver Behavior History Report from Verisk dated July 28, 2025.  The report shows William's personal information linked to William's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated April 8, 2021, the Event Type on that date is "Ignition On."   The Event Time is 08:10:59 and the Odometer was 58311.4.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

131.   Zaher Garmo lives in California.  Zaher owns and drives a 2023 Chevrolet Corvette Z06 with a VIN ending 1244.  Zaher has a Driver Behavior History Report from Verisk dated February 19, 2025.  The report shows Zaher's personal information linked to Zaher's Driving Data that Defendants intercepted, stole, collected, leaked, reported, and sold without consent.  The first Driving Event Detail on that report is dated May 6, 2023, the Event Type on that date is "Ignition On."   The Event Time is 12:00:42 and the Odometer was 15.3.  There is much more Driving Data on the report such as Trip Count, Speeding Events, Hard Braking Events, Rapid Acceleration Events, Daytime Driving Minutes, Nighttime Driving Minutes, Miles Drvien, etc.  At least Verisk will produce reports containing the data at issue when requested by consumers, but Lexis has refused to do so since the related litigation commenced.  Plaintiffs will seek the data from Lexis in discovery.

132.   Plaintiffs each purchased a General Motors vehicle equipped with OnStar technology in California.

133.   Without Plaintiffs' knowledge or consent, Verisk received and stored Plaintiffs' detailed Driving Data from OnStar.

134.   Verisk used Plaintiffs' Driving Data to create driving behavior reports, which it sold or shared with insurance companies and other third parties for its own commercial benefit.

135.   Plaintiffs reasonably expected that detailed data about their driving behavior would remain private unless explicitly authorized otherwise.

136.   Plaintiffs never knowingly consented to Verisk's interception, collection, use, sale, or sharing of their Driving Data.

137.   Plaintiffs suffered concrete harm, including: Loss of control over their personal Driving Data; Increased insurance premiums; Diminished privacy; Economic injury.

## CLAIMS FOR RELIEF

## COUNT I

### Federal Wiretap Act

### 18 U.S.C. §§ 2510, et seq.

### Against GM & OnStar

138.   The Federal Wiretap Act ("FWA"), as amended by the Electronic Communications Privacy Act of 1986, prohibits the intentional interception, use, or disclosure of any wire, oral, or electronic communication.

139.   In relevant part, the FWA prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring "any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

140.   The FWA also makes it unlawful for any person to intentionally disclose, or endeavor to disclose, to any other person or to intentionally use, or endeavor to use, the "contents of any wire, oral, or electronic communication, knowing or having reason

to know that" the communication was obtained in violation of the FWA. 18 U.S.C. § 2511(1)(c) & (d).

141.    The FWA provides a private right of action to any person whose wire, oral, or electronic communication is intercepted, used, or disclosed. 18 U.S.C.§ 2520(a).

142.    The FWA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

143.    The FWA defines "electronic communication" as "any transfer of signs, signals, . . . data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

144.    The FWA defines "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication." 18 U.S.C. § 2510(5).

145.    The FWA defines "contents," with respect to any covered communication, to include "any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. § 2510(8).

146.    The FWA defines "person" to include "any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. § 2510(6).

147.    GM, a corporation, is a person as defined by 18 U.S.C. § 2510(6).

148.    The data and transmissions within, to, and from Plaintiffs' vehicles constitute "electronic communications," as defined by 18 U.S.C. § 2510(12), as they are transfers of signals, data, and intelligence transmitted by electromagnetic, photoelectronic or photooptical systems that affect interstate commerce.

149.    As alleged herein, GM has intercepted, in real time and as it was transmitted, the contents of electronic communications transmitted within, to, and from Plaintiffs' vehicles, and has diverted those communications to itself without consent.

Complaint

150.  GM and OnStar intercepted these electronic communications in real time separately from and in addition to accessing data stored in Plaintiffs' vehicle components.

151.  GM and OnStar intercepted these data transmissions by diverting them, during flight to a telematics control unit ("TCU") or similar device, and to its own servers, unbeknownst to Plaintiffs.  As detailed herein, the electronic communications described above that and OnStar intercepted are tied to individual drivers and vehicles, and not anonymized.

152.  Plaintiffs have a reasonable expectation of privacy within their vehicles, and Plaintiffs reasonably expected privacy while driving their vehicles. Further, there is a reasonable expectation that the interactions between a driver and their vehicle, i.e., their personal driving behaviors and data related thereto, are private.

153.  Common understanding and experience of how automotive vehicles work create a reasonable expectation that a vehicle manufacturer and service provider like GM would not surreptitiously intercept and divert the detailed and personal electronic communications described above.

154.  GM and OnStar have intentionally disclosed or endeavored to disclose to third parties the contents of the electronic communications described above while knowing or having reason to know that the information was obtained through the interception of the communications in violation of 18 U.S.C. § 2511(1)(a). 18 U.S.C. § 2511(1)(c).

155.  GM and OnStar have intentionally used or endeavored to use the contents of the electronic communications described above knowing or having reason to know that the information was obtained through interception in violation of 18 U.S.C. § 2511(1)(a). 18 U.S.C. § 2511(1)(d).

156.  If for some reason, GM and OnStar are considered to be parties to the communications, the FWA provides that a "party to the communication" may be liable where a "communication is intercepted for the purpose of committing any criminal or

tortious act in violation of the Constitution or laws of the United States or of any State" under 18 U.S.C. § 2511(2)(d).

157.   The communications at issue here were intercepted for purposes of committing criminal and tortious acts in violation of the laws of the United States and of California, including, but not limited to:

- Violation of California's Constitution, Art. 1, § 1;
- Intrusion upon seclusion;
- Violation of 15 U.S.C. § 45;
- Violation of the California Consumer Legal Remedies Act;
- Violation of Cal. Penal Code § for statutory larceny;
- Violation of the federal wire fraud statutes at 18 U.S.C. §§ 1343 and 1349;
- Violation California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502;
- Violation of California's Online Privacy Protection Act, Cal. Bus. & Prof. Code §§ 22575, et seq.;
- Violation of Cal. Civil Code § 1798.82;
- Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq;
- Violation of the California Invasion of Privacy Act,  Cal. Penal Code § 631(a)
- Violation of the California Invasion of Privacy Act,  Cal. Penal Code § 638.51

158.   GM and OnStar have disclosed and used the contents of the electronic communications described above by selling Plaintiffs' Driving Data to Lexis, Verisk, and other third parties for their own financial and commercial benefit, obtaining substantial profit.

Complaint

159.    Plaintiffs  have suffered harm and injury due to the interception, disclosure, and/or use of electronic communications containing their private and personal information.

160.    Pursuant to 18 U.S.C. § 2520, Plaintiffs have been damaged by GM and OnStar's interception, disclosure, and/or use of their communications in violation of the Wiretap Act and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and any profits made by GM as a result of the violation or (b) statutory damages for each Plaintiff of whichever is the greater of $100 per day per violation or  $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

## **COUNT II**

### **Federal Wiretap Act**

### **18 U.S.C. §§ 2510, et seq.**

### **Against Lexis & Verisk**

161.    Lexis and Verisk are both corporations, and persons as defined by 18 U.S.C. § 2510(6).

162.    Lexis and Verisk intentionally disclosed the contents of the electronic communications sent within, to, and from Plaintiffs' vehicles that were intercepted by GM and OnStar, as described above, while knowing or having reason to know that the information was obtained through the interception of the communications, in violation of 18 U.S.C. § 2511(1)(a).

163.    In violation of 18 U.S.C. § 2511(1)(d), Lexis and Verisk intentionally used or endeavored to use the contents of the electronic communications sent within, to, and from Plaintiffs' vehicles that were intercepted by GM, as described above, while knowing or having reason to know that the information was obtained through the interception of the communications in violation of 18 U.S.C. § 2511(1)(a) and 18 U.S.C. § 2511(2)(d).

164.   Lexis and Verisk intentionally disclosed Plaintiffs' Driving Data to various entities including auto insurance companies.

165.   Lexis and Verisk used the information derived from the electronic communications described above to create products they market, license, and sell, including driving scores, risk ratings, and access to databases containing Plaintiffs' Driving Data.

166.   Lexis and Verisk have used and disclosed the information derived from the electronic communications described above to create their telematics exchange, develop risk models, and other products they market and sell.

167.   Lexis and Verisk have used and disclosed the contents of the communications described above for their own financial and commercial benefit, obtaining substantial profit.

168.   Lexis and Verisk knew or had reason to know that the information they obtained from GM was obtained through the unlawful interception of communications in violation of 18 U.S.C. § 2511(1)(a).

169.   Lexis and Verisk knew or should have known that the detailed driving information they used and sold was captured in secret in violation of 18 U.S.C. § 2511(1)(a) and 18 U.S.C. § 2511(2)(d) for the following reasons, among others that will become known through discovery:

- the numerous, obvious consent and privacy challenges to the collection of Driving Data that both Lexis and Verisk acknowledged in writing and in presentations;

- the opaque disclosures in GM's various terms and policies, which did not operate as a reasonable basis for inferring consumer consent to share the information with Lexis and Verisk, and both Lexis and Verisk understood that consumer consent for the collection of the information could be an issue if the "chain of consent" were broken;

47

- the sheer volume of data Lexis and Verisk were receiving from GM versus from other manufacturers gave Lexis and Verisk reason to know that GM was harvesting data without consumer consent;

- the lack of public knowledge about GM's collection and sharing practices until at least 2024;

- that fact that Lexis continued to collect after it was publicized that collection was secret/happening without consent or knowledge; and

- the nature of the data which indicated it had to be obtained via an interception of electronic communications within, to, and from consumers' vehicles.

170. Defendants continue to disclose and use unlawfully obtained Driving Data for their own financial gain to this day.

171. Pursuant to 18 U.S.C. § 2520, Plaintiffs have been damaged by the disclosure, and/or use of the electronic communications described above in violation of the Wiretap Act and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and any profits made by Lexis and Verisk as a result of the violations or (b) statutory damages for Plaintiffs of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

**COUNT III**

**Fair Credit Reporting Act**

**15 U.S.C. § 1681, et seq.**

**Against Lexis & Verisk**

172. Plaintiffs are "consumers" as defined in 15 U.S.C. § 1681a(c), entitled to the protections of the Fair Credit Reporting Act ("FCRA").

Complaint

173. Verisk and Lexis are each a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) because they regularly engage, for monetary fees and with the use of interstate commerce, in the practice of assembling and evaluating consumer information—including driving behavior and telematics data—for the purpose of furnishing "consumer reports" to third parties such as insurance companies.

174. The driving behavior data Verisk compiles, processes, and furnishes constitutes a "consumer report" under 15 U.S.C. § 1681a(d), because it includes information bearing on an individual's character, general reputation, personal characteristics, or mode of living, and is used or expected to be used in connection with eligibility determinations for insurance products and pricing.

175. Verisk provides these consumer reports to insurers and other third parties without obtaining valid consumer consent and without satisfying the permissible purpose requirements under 15 U.S.C. § 1681b. In doing so, Verisk furnishes consumer reports for purposes not authorized by the FCRA.

176. Moreover, under 15 U.S.C. § 1681e(b), consumer reporting agencies must follow reasonable procedures to ensure the maximum possible accuracy of the information they furnish. Verisk failed to adopt or implement adequate procedures to verify the accuracy and relevance of the data it disseminated. Instead, Verisk compiled and transmitted telematics and behavioral data that frequently lacked context, contained errors, and was linked to individuals without proper verification.

177. As a result of Verisk's unlawful conduct, Plaintiffs were harmed. They were subjected to inaccurate risk profiles, suffered increased insurance premiums, lost control over sensitive personal information, and experienced diminished reputational and economic standing.

178. Verisk's violations of the FCRA were willful and/or reckless, entitling Plaintiffs to statutory and punitive damages under 15 U.S.C. § 1681n. In the alternative, Verisk's conduct was negligent, entitling Plaintiffs to actual damages under 15 U.S.C. § 1681o.

Complaint

179.   Accordingly, Plaintiffs seek all available relief under the FCRA, including actual damages, statutory damages, punitive damages, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

<h2 style="text-align:center"><u>COUNT IV</u></h2>

<strong>Statutory Larceny</strong>

<strong>Cal. Pen. Code §§  484, 496</strong>

<strong>Against All Defendants</strong>

180.   Cal. Pen. Code § 496(a) imposes liability upon:

> [e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained[.]

181.   Cal. Pen. Code § 484(a), which defines theft, states in pertinent part:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

182.   Under California law, the Plaintiffs' Driving Data constitutes property that can be the subject of theft.

183.   Defendants conspired and acted in a manner constituting theft by surreptitiously taking  Plaintiffs' Driving Data, with the specific intent to deprive Plaintiffs of their property.

184. Defendants did not have Plaintiffs' consent to take their property.

185.   Plaintiffs are entitled to treble damages, attorney fees and costs for Defendants' violations of Cal. Pen. Code § 489(a) under Cal. Pen. Code § 496(c).

<u>**COUNT V**</u>

**California Invasion of Privacy Act**

**Wiretapping**

**Cal. Pen. Code § 631**

**Against All Defendants**

186.   The California Invasion of Privacy Act ("CIPA"), codified at California Penal Code §§ 630–638, reflects the Legislature's intent to protect the right of privacy of the people of California in response to the growing threat posed by advancements in technology.   As stated in Penal Code § 630, the statute was enacted to address the dangers of "new devices and techniques for the purpose of eavesdropping upon private communications."

187.   To establish liability under CIPA § 631(a), Claimants need only establish that Respondent, by means of any machine, instrument, contrivance, or in any other manner does the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*

Complaint

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

188.    Section 631(a) is not limited to phone lines, but also applies to new technologies such as computers, the Internet, and email. *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to new technologies and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at * 5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs electronic communications); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

189.    Section 631(a) prohibits any person from aiding, agreeing with, employing, or conspiring with another to unlawfully commit or facilitate any of the acts described above.

190.    To avoid liability under Section 631(a), a defendant must demonstrate that it obtained the consent of all parties to the intercepted communication.

191.    Defendants are each a "person" within the meaning of the statute.

192.    The data and transmissions within, to, and from Plaintiffs' vehicles constitute messages, reports, and/or communications, within the scope of Cal. Penal Code § 631(a), as they are transfers of signals, data, and intelligence transmitted by a wire, line, or cable system.

193.    GM intercepted, in real time and as they were transmitted, the contents of communications, and have diverted those communications to itself without consent.

194.    GM intercepted these data transmissions by diverting them, during flight via a telematics control unit ("TCU") or similar device, to its own servers, unbeknownst to Plaintiffs.

195.   The electronic communications detailed above that GM intercepted are tied to individual drivers and vehicles, and not anonymized.

196.   The OnStar TCU equipped in Plaintiffs' vehicles constitutes a machine, instrument, or contrivance that taps or makes unauthorized connection to Plaintiffs' vehicles' communication systems.

197.   Plaintiffs have a reasonable expectation of privacy within their vehicles, and Plaintiffs reasonably expected privacy while driving their vehicles. Further, there is a reasonable expectation that the interactions between a driver and their vehicle, i.e., their personal driving behaviors and data related thereto, are private.

198.   GM intentionally disclosed or endeavored to disclose to third parties the contents of the communications described above while knowing or having reason to know that the information was obtained through the interception of the communications.

199.   GM has intentionally used or endeavored to use the contents of the communications described above knowing or having reason to know that the information was obtained through unlawful interception.

200.   GM has disclosed and used the contents of the communications described above by selling Plaintiffs' personal Driving Data to Lexis, Verisk, and other third parties for its own financial and commercial benefit, obtaining substantial profit.

201.   Lexis and Verisk have also violated Cal. Penal Code § 631, by disclosing or endeavoring to disclose to third parties the contents of the communications intercepted by GM described above while knowing or having reason to know that the information was obtained through the interception of the communications in violation of Cal. Penal Code § 631.

202.   Lexis and Verisk intentionally disclosed Plaintiffs' detailed Driving Data to various auto insurance companies.

203.   In further violation of Cal. Penal Code § 631, Lexis and Verisk willfully used or endeavored to use the contents of the communications described above while

knowing or having reason to know that the information was obtained through the interception of the communications in violation of Cal. Penal Code § 631.

204.  Lexis and Verisk have used the information derived from the communications described above to create products they market, license, and sell, including so-called driving scores, risk ratings, and access to databases containing Plaintiffs' Driving Data.

205.  Lexis and Verisk have used the information derived from the communications described above in aggregate fashion to create their telematics exchange, develop risk models, and other products they market and sell.

206.  Lexis and Verisk have used and disclosed the contents of the communications described above for their own financial and commercial benefit, obtaining substantial profit.

207.  Lexis and Verisk knew or had reason to know that the information they obtained from GM was obtained through the unlawful interception of communications in violation of the California Wiretapping Act.

208.  Lexis and Verisk knew or should have known that the detailed driving information they used and sold was captured in secret in violation of the Act for the following reasons, among others that will become known through discovery:

- the numerous, obvious consent and privacy challenges to the collection of Driving Data that both Lexis and Verisk acknowledged in writing and in presentations;

- the opaque disclosures in GM's various terms and policies, which did not operate as a reasonable basis for inferring consumer consent to share the information with Lexis and Verisk;

- the sheer volume of data Lexis and Verisk were receiving from GM versus from other manufacturers;

Complaint

- the lack of public knowledge about GM's collection and sharing practices until at least 2024;
- that fact that Lexis continued to collect after it was publicized that collection was secret/happening without consent or knowledge; and
- the nature of the data which indicated it had to be obtained via wiretapping.

209.    Defendants continue to disclose and use unlawfully obtained Driving Data for their own financial gain to this day.

210.    Defendants, collectively, agreed, employed, and conspired with one another to intercept, collect, disseminate, and use data concerning Plaintiffs' vehicles.

211.    At all relevant times, Plaintiffs were not aware that Defendants were intercepting and recording their data, and therefore could not provide consent to have any part of their communications intercepted and recorded, transmitted, or used.

212.    Neither Defendants nor any other person informed Plaintiffs that Defendants were intercepting and transmitting their data. Plaintiffs did not know Defendants were intercepting and recording their data, as such they could not and did not  consent for their data to be intercepted and/or used by Defendants.

213.    As a direct and proximate result of Defendants violations of the Wiretapping Act, Plaintiffs were injured and suffered damages, a loss of privacy, and loss of the value of their personal information in an amount to be determined at trial.

214.    Defendants were unjustly enriched by their violations of the Wiretapping Act.

215.    Pursuant to Cal. Penal Code § 637.2, Plaintiffs seek all available relief, including: (a) statutory damages of $5,000 per violation or three times actual damages, whichever is greater; (b) injunctive relief to prohibit further unlawful conduct; and (c) reasonable attorneys' fees and costs.

Complaint

# COUNT VI

## California Invasion of Privacy Act

## Electronic Tracking Device

## Cal. Pen. Code § 637.7

## Against GM & OnStar

216.   California Penal Code Section 637.7 prohibits any person from using an electronic tracking device to determine the location or movements of any person.

217.   GM and OnStar are each a "person" within the scope of CIPA.

218.   The telematics control unit ("TCU") attached to Plaintiffs' vehicles is an "electronic tracking device" as defined by CIPA as it is a device that is attached to the vehicle and which reveals the vehicles' location or movement by the transmission of electronic signals through the intercept, collection, and dissemination of Plaintiffs' location information.

219.   GM and OnStar violated Cal. Penal Code § 637.7 by attaching the TCU/an electronic tracking device to Plaintiffs' vehicles and thereby intercepting, collecting, taking, storing, using, and disseminating Plaintiffs' Driving Data.

220.   Neither GM nor any other person informed Plaintiffs and California Subclass Members or meaningfully disclosed that GM had attached an electronic tracking device to their vehicles.

221.   The collection of Plaintiffs' and California Subclass Members' Driving Data without full and informed consent violated and continues to violate Cal. Penal Code § 637.7.

222.   As a direct and proximate result of GM's violations, Plaintiffs and California Subclass Members were injured and suffered damages, a loss of privacy, and loss of the value of their personal information in an amount to be determined at trial.

223.   Pursuant to Calif. Penal Code Section 637.2, Plaintiffs and California Subclass Members have been injured by Defendants' violations of the CIPA and seek

56

damages for the greater of $5,000 or three times the amount of actual damages, and injunctive relief, plus reasonable attorney fees, and costs.

## COUNT VII

### California Invasion of Privacy Act

### Pen Register or Trap & Trace Device

### Cal. Pen. Code § 638.51

### Against GM & OnStar

224.   Cal. Penal Code § 638.50(b) defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."

225.   Cal. Penal Code § 638.50(c) defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."

226.   Cal. Penal Code § 638.51 prohibits any person from using a pen register or trap and trace device without a court order.

227.   GM and OnStar's use of the telematics control unit ("TCU") constitutes use of a "pen register" because (1) the data was obtained using a device or process that recorded their routes, addresses and signals (2) that were transmitted by the instruments in their cars (3) from which the electronic communications were transmitted - throughout the cars and over GM and OnStar's 4G LTE network.

228.   GM and OnStar's use of the TCU constitutes use of a "trap and trace device" because they used a device or process that captured the incoming electronic impulses that identified routes, addresses and signals that were "reasonably likely to identify the source of a wire or electronic communication" by linking the communications to Plaintiffs' names, addresses, GPS locations and VINs.

Complaint

229.   Plaintiffs seek statutory damages of $5,000 per violation of Cal. Penal Code § 638.51 under Cal. Penal Code § 637.2.

## COUNT VIII

**California Consumer Privacy Act**

**Cal. Civ. Code §§ 1798.100, et seq.**

**Against All Defendants**

230.   The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100 et seq., was enacted to provide California residents with robust rights regarding the collection, use, and disclosure of their personal information by covered businesses without appropriate notice and consent.

231.   Defendants are each a "business" within the meaning of Cal. Civ. Code § 1798.140(d), as it collects consumers' personal information, do business in the State of California, and meet one or more of the statutory thresholds, including collecting and processing the personal information of more than 100,000 consumers.

232.   Plaintiffs are "consumers" as defined under Cal. Civ. Code § 1798.140(g), and the Driving Data collected, used, and disclosed by Defendants - including, but not limited to, location history, driving behavior, and telematics profiles - constitutes "personal information" under Cal. Civ. Code § 1798.140(v).

233.   Pursuant to Cal. Civ. Code § 1798.150(a)(1), a business that owns, licenses, or maintains personal information about a California resident must implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect it from unauthorized access, exfiltration, theft, or disclosure.

234.   GM and OnStar violated this provision by failing to implement and maintain reasonable security procedures and practices and by acquiring, storing, and using Plaintiffs' personal information without adequate notice, consent, or lawful basis.

Complaint

235.    Lexis and Verisk violated their duty to implement and maintain reasonable security procedures and practices by accepting, using, and disclosing Plaintiffs' and California Subclass Members' Driving Data without their authorization and knowing that it was obtained without their consent.

236.    As a direct and proximate result of Defendants' conduct, Plaintiffs' personal information was subject to unauthorized access and use, causing a loss of privacy, increased risk of identity theft or misuse, and economic harm.

237.    Accordingly, Plaintiffs seek all relief authorized under the CCPA, including: (1) actual damages or statutory damages of not less than $100 and not greater than $750 per consumer per incident, whichever is greater; (2) injunctive and declaratory relief to prevent future violations; (3) restitution; and (4) reasonable attorneys' fees and costs.

## COUNT IX

### California's Unfair Competition Law (UCL)

### Cal. Bus. & Prof. Code §§ 17200, et seq.

### Against All Defendants

238.    The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq, prohibits unlawful, unfair, or fraudulent business acts or practices.

239.    Defendants are each a "person" as defined under Cal. Bus. & Prof. Code § 17201 and are subject to liability under the UCL.

240.    Defendants engaged in unlawful business practices by violating multiple laws protecting consumer privacy, outlined in this complaint, including the Federal Wiretap Act, the Fair Credit Reporting Act, the California Constitution (Article I, § 1), the California Invasion of Privacy Act, the California Consumer Privacy Act, etc.

241.    Defendants also engaged in unfair and unconscionable conduct by acquiring, using, and disseminating Plaintiffs' Driving Data without their knowledge or consent, and by profiting from this unauthorized use of sensitive personal information.

242.   Defendants knew or should have known that they were using Plaintiffs' Driving Data without Plaintiffs' consent. Defendants conduct was unfair in that it caused substantial harm to Plaintiffs.  Namely, the unauthorized interception, use, and monetization of sensitive driving behavior data, without any corresponding benefit to Plaintiffs.

243.   Defendant's practices were unconscionable because they exploited the unequal information and power dynamic between Defendants and unsuspecting Plaintiffs, who were never provided adequate notice or an opportunity to opt out of the data collection. Defendant' actions - knowingly intercepting, obtaining, accepting, analyzing, selling, and disseminating improperly obtained data for financial gain offend public policy.

244.   Defendants' conduct caused substantial harm to Plaintiffs, who were unable to reasonably protect their interests. Defendants knowingly capitalized on this disparity, despite being aware that the consumers never consented to the collection or use of their Driving Data.

245.   Driving Data has tangible economic value. Defendants knowingly exploited this value while depriving Plaintiffs of both compensation and control over their data.

246.   As a direct and proximate result of Defendants' conduct, Plaintiffs suffered concrete and particularized harm, including the loss of privacy; the unauthorized disclosure and misuse of their sensitive personal information; the diminished value and utility of their Driving Data; an increased risk of future misuse or unauthorized dissemination; and measurable economic harm arising from the commercial exploitation of their data without consent or compensation.

247.   Pursuant to Cal. Bus. & Prof. Code § 17203 and Cal. Code Civ. Proc. § 1021.5, Plaintiffs seek relief under Cal. Bus. & Prof. Code § 17200, et seq, including, but not limited to, restitution to Plaintiffs of money or property Defendants may have acquired by means of Defendants' unlawful, and unfair

Complaint

business practices, restitutionary disgorgement of all monies that accrued to Defendant because of Defendants' unlawful and unfair business practices, declaratory relief, reasonable attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## COUNT X

### Invasion of Privacy Under California's Constitution

### Against All Defendants

248.    Article I, Section 1 of the California Constitution provides that all people have an inalienable right to privacy. This right protects individuals from intrusive acts by private entities, including the unauthorized collection and exploitation of personal information.

249.    Plaintiffs have a legally protected privacy interest in their Driving Data and a reasonable expectation that this data, which reflects their location, habits, driving patterns, and behavior inside their own vehicles, would not be collected, accessed, or disseminated without their knowledge or consent.

250.    As Plaintiffs engaged in ordinary driving activities, they unknowingly generated highly sensitive, detailed data that mapped intimate aspects of their lives. Without their knowledge or informed consent, this data was accessed, compiled, analyzed, and exploited by Defendants for their own commercial purposes.

251.    Defendants knowingly and intentionally intruded upon Plaintiffs' seclusion by accessing, analyzing, storing, packaging, and monetizing confidential Driving Data. These intrusions occurred within the private space of individuals' vehicles and involved the continuous, unauthorized surveillance of their movements and behavior.

252.    Defendants' conduct was highly offensive to a reasonable person and constituted an egregious violation of established social norms and privacy expectations. Specifically, Defendants accessed and sold Plaintiffs' private Driving Data without consent, deprived Plaintiffs of control over their personal information and its use,

allowed the dissemination of misleading or incomplete driving profiles, and profited from this exploitation without providing any compensation to Plaintiffs.

253.    Defendants acted in reckless disregard of Plaintiffs' privacy rights by knowingly participating in a system that lacked transparency, meaningful consent, and proper consumer notice. Despite well-known industry concerns regarding data privacy and consent, Defendants exploited their access to sensitive Driving Data for their own benefit. As a direct and proximate result of Verisk's unlawful conduct, Plaintiffs suffered significant harm, including the loss of privacy, seclusion, and autonomy; emotional distress and mental anguish; loss of control and diminution in the value of their personal data; and economic injury arising from the unauthorized use and sale of their information.

254.    Unless enjoined, Defendants' ongoing conduct will continue to expose Plaintiffs' Driving Data to unauthorized use and further erosion of their privacy.

255.    Accordingly, Plaintiffs seek all relief available for invasion of privacy claims under California's Constitution.

## **COUNT XI**

### **Unjust Enrichment**

### **Against All Defendants**

256.    Without Plaintiffs' knowledge or consent, Defendants obtained access to highly sensitive and valuable Driving Data generated by Plaintiffs during the ordinary use of their vehicles. Through this conduct, Plaintiffs unknowingly conferred a significant benefit on Defendants in the form of this Driving Data.

257.    Defendants knowingly accepted and appreciated this benefit. They used Plaintiffs' Driving Data to build and enhance commercial products and services, including telematics scores, risk modeling tools, and data sets sold or licensed to third parties. Defendants profited substantially from these activities.

258.    Plaintiffs received no compensation or benefit from Defendants' use of their Driving Data. Because Defendants obtained and monetized this data without

Complaint

consent, it would be inequitable for Defendants to retain the profits and value derived from the exploitation of Plaintiffs' personal information.

259.    As a result of Defendants' unjust enrichment, Plaintiffs are entitled to restitution in an amount to be proven at trial, including but not limited to the value of the Driving Data Defendants wrongfully used and monetized, and the profits Defendants have derived and continues to derive from such use.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment against Defendant, as follows:

a.    For a declaration that Defendant's conduct violated the laws and statutes contained herein;

b.    For an order finding in favor of Plaintiffs on all causes of action asserted herein;

c.    For an award of actual, statutory, nominal, and punitive damages as permitted by law and in an amount to be determined at trial;

d.    For restitution and disgorgement of all monies unlawfully obtained by Defendants as a result of their misconduct;

e.    For preliminary and permanent injunctive relief enjoining Defendants from continuing the unlawful conduct alleged herein and requiring the implementation of reasonable data privacy and security measures;

f.    For pre-judgment and post-judgment interest at the maximum rate permitted by law;

g.    For an award of reasonable attorney fees, costs of suit, and expenses incurred in this action; and,

h.    For such other and further relief as the Court deems just and proper.

///

///

///

///

Complaint

## <u>JURY TRIAL DEMANDED</u>

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Respectfully submitted,

**Swigart Law Group, APC**

Date:  October 2, 2025

By:  _s/ Joshua B. Swigart_
Joshua B. Swigart
Josh@SwigartLawGroup.com

**Shay Legal, APC**

Date:  October 2, 2025

By:  _s/ Daniel G. Shay_
Daniel G. Shay
Dan@ShayLegal.com
Shay Legal, APC

_Attorneys for Plaintiffs_

Complaint